UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONDA NORRIS,

                Plaintiff,                              Case No. 5:06-CV-23

v.                                                         HON. GORDON J. QUIST

ELECTROLUX HOME PRODUCTS, INC.
a/k/a ELECTROLUX,

                Defendant.
_____/

## OPINION

Plaintiff, Ronda Norris, has sued Defendant, Electrolux Home Products, Inc. ("Electrolux"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, for review of Electrolux's denial of Plaintiff's claim for disability benefits. Plaintiff alleges that she is totally and permanently disabled and that Electrolux breached its agreement to provide disability benefits when it denied Plaintiff's claim. Now before the Court is Electrolux's motion for judgment on the administrative record. For the following reasons, the Court will grant Electrolux's motion and will enter judgment in favor of Electrolux based in the administrative record.

### I. Background

Electrolux is a Delaware corporation that, until recently, had a production plant located in Greenville, Michigan. Electrolux established the 2001 Electrolux Pension Plan for Bargaining Employees ("Plan") as a pension plan for employees at the Greenville plant who are represented by UAW Local 137 and IATC Local 8 (defined in the Plan as the "Union"). Plaintiff was employed at the Greenville plant and was a Covered Employee under the Plan.

Plaintiff filed an application for total and permanent disability under the Plan on August 21, 2003. (Administrative Record ("A.R.") at 1.) Plaintiff claimed disability based on "RA [rheumatoid

arthritis] & Fribromylgia [sic] & Migrains [sic] & Sleep Apenia [sic]." (*Id*.) On August 20, 2003, Plaintiff submitted a note written by Dr. Justus Fiechtner, her treating physician, stating that Plaintiff "is totally disabled at this time and will be for the foreseeable future due to medical problems." (A.R. at 15.)

> The Plan provides the following definition of "totally and permanently" disabled:
>
> **Section 26.  Totally and Permanently Disabled.**
> "Totally and permanently disabled" means disabled as a result of bodily injury or disease which, on the basis of medical evidence satisfactory to the Board of Administration (prior to March 1, 1993 the "Company"), is found to wholly and permanently prevent the disabled person from engaging in any occupation or employment for wage or profit.

(Plan Article II, Section 26; A.R. at 1960.) Under the Plan, the Board of Administration (the "Board") is composed of four members, two chosen by Electrolux's Human Resources Advisory Board and two chosen by the Union. (Plan Article VIII, Section 3(a); A.R. at 1999.) Decisions of the Board made within its authority are considered final and binding on the Union, its members, Covered Employees, and Electrolux. (Plan Article VIII, Section 6(d); A.R. at 2001.)

At the Board's request, Plaintiff executed authorizations for the release of her medical records. The Board received Plaintiff's medical records from her various treating physicians since 2001. These records indicated a history of treatment for rheumatoid arthritis, fibromyalgia, migraine headaches, and sleep apnea. (A.R. at 19-51, 55-73, 76-94.) Plaintiff submitted records indicating that she underwent psychological treatment and "counseling on skills and coping strategies to manage pain and symptoms" beginning in 2003. (A.R. at 693-724.) Plaintiff also submitted medical records showing additional conditions and records of disability leave from work dating back to 1978. (A.R. at 310-1940.)

After receiving Plaintiff's medical records, the Board referred Plaintiff to Dr. Randolph Russo for an independent medical examination ("IME"). (A.R. at 6-14.) Dr. Russo reviewed

Plaintiff's medical records and examined her on October 28, 2003. Dr. Russo's report specifically discussed Plaintiff's fibromyalgia. Dr. Russo noted that Plaintiff "has pain throughout her body that is unsubstantiated by an organic medical diagnosis." (A.R. at 12.) Dr. Russo stated that fibromyalgia, in general, is a "syndrome" that "is not a medical diagnosis that is substantiated by objective findings." (*Id*.) Dr. Russo noted "subjective findings of pain, pressure points, and the identification of 18 of 18 tender spots as identified by the American College of Rheumatology," placing Plaintiff "in the category of fibromyalgia." (*Id*.) However, Dr. Russo stated that it "is not a disabling condition." (*Id*.) Dr. Russo also observed that Plaintiff "seems to be well controlled" with respect to her rheumatoid arthritis. (A.R. at 12-13.) Dr. Russo concluded:

> At the present time, I am unable to support her application for disability as related to a medical diagnosis or complaint. I do not feel Ms. Norris is disabled at the present time. I feel that disability at age 43 with the paucity of medical diagnoses identified is a less than optimal approach for a situation such as Ms. Norris.

(A.R. at 13.) Dr. Russo recommended placing her "on a light to medium physical demand level, which would be lifting up to 35 pounds." (*Id*.) Dr. Russo stated that, while he would defer to a neurologist regarding Plaintiff's migraines, he could "find minimal reason that headaches would support the need disability [sic]." (*Id*.) Dr. Russo also indicated that "if Ms. Norris remains consistent with her program of conditioning, she will be able to function at a fairly normal level." (*Id*.)

The Board also received IMEs performed pursuant to a workers' compensation claim filed by Plaintiff. Plaintiff underwent a psychological evaluation by Dr. Scott Stehouwer on January 13, 2005. Dr. Stehouwer concluded that Plaintiff "from an emotional standpoint is not disabled [sic] is not in need of work restrictions." (A.R. at 132.) Dr. Stehouwer's report "strongly recommended that any person who attempts to evaluate and/or treat Ms. Norris from a physical standpoint rely upon objective physical findings moreso [sic] than on her subjective complaints." (A.R. at 131-32.)

3

Dr. Stehouwer based his recommendation on examination results indicating "that Ms. Norris will exaggerate and embellish her complaints of physical problems." (A.R. at 131.)

An IME was also performed by another orthopedic surgeon, Dr. Grant Hyatt, who reviewed the Plaintiff's medical records and examined her on February 15, 2005. Dr. Hyatt concluded that "[f]rom an orthopedic perspective, there is no finding that would preclude the patient from resuming regular, unrestricted work activities." (A.R. at 148.) While Dr. Hyatt noted "[c]linical findings suggestive of fibromyalgia" (A.R. at 147), he declined to address the proper management of Plaintiff's fibromyalgia, because it "is a condition that is typically evaluated by a rheumatologist, or, in some cases, a specialist in physical medicine and rehabilitation." (A.R. at 148.) Dr. Hyatt chose to "defer any opinions concerning management of that aspect of the Plaintiff's condition to an appropriate specialist." (*Id*.)

While Plaintiff's first claim for benefits was pending, on August 3, 2005, she submitted a second claim because of her alleged total and permanent disability due to "RA, OA, Fibromylsia [sic], migraines, Irr. Bowel, Sleep apenia [sic], restless leg, chronic Hives, chronic pain, depression." (A.R. at 157.) On September 15, 2005, the Board informed Plaintiff that her first request for disability benefits had been reviewed and denied effective September 14, 2005. (A.R. at 102.) The Board (referred to in the letter as the "Committee") denied Plaintiff's application "based on the report from the Independent Medical Exams [Plaintiff] went to on October 28, 2003, January 13, 2005, and February 15, 2005." (A.R. at 102.) The Board provided copies of the IMEs for Plaintiff's review.

Plaintiff presented two additional notes from Dr. Fiechtner, dated August 16, 2005, and September 20, 2005, stating that Plaintiff was totally disabled as of August 20, 2003, and would remain in that condition for the foreseeable future. (A.R. 165, 168.) After receiving the letter

4

denying her first application for benefits, Plaintiff submitted additional medical records and requested an appeal of the Board's denial. (A.R. at 208-09.) Plaintiff also included a copy of a deposition of Dr. Hyatt. (A.R. at 208-09, 212.) The Board scheduled Plaintiff for two additional IMEs, one with a psychiatrist and one with an orthopedic specialist. (A.R. at 171-72.)

Plaintiff underwent a psychological examination by Dr. Edward Klarman on November 2, 2005. (A.R. at 173.) Dr. Klarman found that "from a psychiatric point of view, there is not a lot wrong with Ms. Norris and most assuredly her psychological condition does not rise to the level of disability or impairment." (A.R. at 183.) Dr. Klarman concluded that "from a psychiatric point of view, Ms. Norris is capable of undertaking employment." (*Id.*) Dr. Klarman noted his belief "that Ms. Norris is being over treated" and that the "people that are dealing with her are willing to treat all of her subjective ailments." (*Id.*) Dr. Klarman suggested that her request for permanent disability "be assessed on the merits of actual physical problems and the degree to which there are verifiable findings supporting her ailments." (*Id.*)

Dr. David Frye, an orthopedic specialist, performed a physical examination of Plaintiff on November 7, 2005. Dr. Frye concluded:

> There are no objective findings clinically or radiographically that preclude Ms. Norris from unrestricted full-time employment. In my opinion she has no residual of an occupational or a non-occupational musculoskeletal deficit. She has a multitude of self-imposed subjective reasons for being sedentary and inactive. The complaints and limitation are not supported by objective findings.

(A.R. at 194.) Finally, Dr. Frye stated that he was "unable to causally relate any of the above impressions to her emplyment [sic]" and that the "degenerative conditions are consistent with her age and body habitus." (*Id.*)

On November 30, 2005, the Board informed Plaintiff that her appeal had been reviewed by the Board and denied, effective November 21, 2005. (A.R. at 153.) The Board stated that its

5

decision was "based on the Independent Medical Exams [Plaintiff] attended on November 2, 2005 and November 7, 2005." (*Id.*)  The Board provided copies of the IMEs for Plaintiff's review. Plaintiff appealed this decision of the Board to this Court for review.

## II.  Discussion

**A.     Standard of Review**

A threshold issue the Court must decide is the standard of review that applies to Electrolux's decision to deny benefits.  A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).  The *de novo* standard of review applies to both the factual determinations and legal conclusions of the plan administrator.  *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious" standard. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991).  The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if they are 'rational in light of the plan's provisions'") (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)).  In applying this standard, the Court must defer to the administrator's

interpretation when the plan vests the administrator with discretion to interpret the plan; an administrator's determination will be overturned only upon a showing of internal inconsistency in the plan or bad faith. *Davis*, 887 F.2d at 695. While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez*, 150 F.3d at 555 (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1993) (italics and alteration in original)). Moreover, a court may not "merely . . . rubber stamp the administrator's decision," but must actually "exercise [its] review powers." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Furthermore, a plan administrator's conflict of interest does not alter the standard of review, but is a factor that should be taken into account in determining whether the decision was arbitrary and capricious. *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998).

Electrolux argues that the arbitrary and capricious standard applies because the Plan contains a clear grant of discretion upon the Board to determine eligibility.[1] The Plan's definition of "totally and permanently disabled" requires that a disability must be established "on the basis of medical evidence satisfactory to the Board of Administration." (A.R. at 1960.) The Court agrees that this is a clear grant of discretion upon the Board to determine a claimant's eligibility for benefits and that the arbitrary and capricious standard of review applies. *See Perez*, 150 F.3d at 555.

**B.    Denial of Benefits**

Based upon its review of the administrative record, the Court concludes that Electrolux's decision to deny Plaintiff's claim for disability benefits was supported by sufficient evidence. In

---

[1] Plaintiff does not challenge the applicability of the arbitrary and capricious standard of review.

concluding that Plaintiff was not "totally and permanently disabled" under the Plan, the Board relied on the IME's of three orthopedic physicians and two psychiatrists. Plaintiff argues that the denial of benefits was arbitrary and capricious because the Board relied upon the examinations of "one-time examiners," rather than on Plaintiff's treating physicians. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 2.) Plaintiff alleges that these one-time examiners were predisposed to deny any evidence of disability. (*Id*.) Plaintiff argues that while a "treating physician rule" does not apply, the rationale for the rule should be considered in this case when weighing the evidence.

In declining to adopt a treating physician rule under ERISA, the Supreme Court discussed the relevance of treating physician reports when evaluating a claim:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1972 (2003). The Court also addressed concerns of bias on the part of examiners, noting that "if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Id*. at 832, 123 S. Ct. at 1971.

First, Plaintiff argues that the Board should have referred Plaintiff to a fibromyalgia specialist, rather than orthopedic specialists, because Plaintiff's alleged condition was not orthopedic in nature. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 2.) Plaintiff argues that Dr. Fiechtner, as a rheumatologist, was best suited to diagnose and evaluate the severity of Plaintiff's fibromyalgia. Plaintiff points to the portion of Dr. Hyatt's IME report regarding fibromyalgia, which stated, "I defer any opinions concerning management of that aspect of the Plaintiff's condition to an appropriate specialist." (A.R. at 148.) Plaintiff argues that Dr. Russo, like Dr. Hyatt, should have

deferred to Plaintiff's treating physician regarding his analysis of fibromyalgia. Dr. Russo noted in his report that fibromyalgia "has waxing and waning symptomatology," (A.R. at 12), and Plaintiff contends that Dr. Fiechtner, as her treating physician, was in the best position to observe the severity of Plaintiff's fibromyalgia because he saw her on a regular basis for treatment.

However, the Board was not required to accord special weight to the opinions of Plaintiff's treating physicians. In this case, the physicians who conducted the IMEs had the opportunity to review Plaintiff's medical records, including those records that Plaintiff contends should have been given greater weight. Dr. Russo addressed Plaintiff's history of fibromyalgia, but concluded that the condition, by definition, was not disabling, and that Plaintiff did not show any physical signs of having a disabling condition. Dr. Russo pointed out the waxing and waning nature of fibromyalgia symptoms and the inherently subjective nature of the syndrome, as it is not substantiated by objective findings. (A.R. at 12.) Based on his review of Plaintiff's medical history and his own examination, Dr. Russo indicated that he could not support Plaintiff's application for disability.

Dr. Hyatt reviewed Plaintiff's records and noted clinical findings suggestive of fibromyalgia, but declined to address the management of that condition, and found no orthopedic problems preventing her from working. Dr. Frye also reported no objective findings precluding Plaintiff from "unrestricted full-time employment" and noted that Plaintiff "has a multitude of self-imposed subjective reasons for being sedentary and inactive" which "are not supported by objective findings." (A.R. at 194.)

Plaintiff argues that the "only qualified treater for the conditions claimed to be disabling are the claimants [sic] treating physicians." (Pl.'s Resp. to Def.'s Mot. Summ. J. at 4-5.) To the extent that Plaintiff argues that Dr. Russo exhibited bias in his report, the Supreme Court has addressed this concern, noting that just as a consultant hired by the Board may exhibit bias towards a finding of not disabled, so may Plaintiff's treating physician exhibit a bias towards a finding of disabled.

9

*See Nord*, 538 U.S. at 832, 123 S. Ct. at 1971. The Court further stated that "[i]ntelligent resolution of the question whether routine deference to the opinion of a claimant's treating physician would yield more accurate disability determinations, it thus appears, might be aided by empirical investigation of the kind courts are ill equipped to conduct." *Id*. Further undercutting Plaintiff's claim is the fact that Dr. Russo's IME was but one of three performed by orthopedic physicians, none of which found Plaintiff to be physically unable to work.

Plaintiff next argues that the Board acted in an arbitrary and capricious manner by demanding objective evidence of disability due to fibromyalgia, a condition whose symptoms are subjective in nature. Plaintiff argues that there is no requirement in the Plan that the medical evidence be based on objective criteria.

However, just as the Plan does not require objective evidence, neither does it prohibit the Board from relying on objective medical evidence rather than subjective complaints. The Plan does not establish any parameters for the medical evidence necessary for a finding of disability, requiring only that Plaintiff's alleged total and permanent disability be established "on the basis of medical evidence satisfactory to the Board." (Plan Article II, Section 26; A.R. at 1960.)

Furthermore, the psychiatric IMEs support the Board's decision to deny benefits based on IMEs which based their conclusions on objective medical observations rather than subjective complaints. The two psychiatrists both found that Plaintiff was not disabled from a psychological standpoint and recommended that any decisions made on her application for disability be based on objective findings of physical problems rather than on Plaintiff's subjective complaints. Dr. Stehouwer's testing indicated Plaintiff "will exaggerate and magnify relatively minor physical problems so as to present them as far more significant and of far greater impact on her life than is actually the case." (A.R. at 129.) Dr. Stehouwer "strongly recommended that any person who attempts to evaluate and/or treat Ms. Norris from a physical standpoint rely upon objective physical

10

findings moreso [sic] than on her subjective complaints." (A.R. at 132.) Similarly, Dr. Klarman's report specifically recommended that any decision regarding Plaintiff's application for disability be made "on the merits of actual physical problems and the degree to which there are verifiable findings supporting her ailments."[2] (A.R. at 183.)

Based on the evidence reviewed by the Board, including the psychiatrist's recommendations that any decision made regarding Plaintiff's physical complaints be based on objective rather than subjective criteria, and the IME reports finding no objective physical basis for Plaintiff's disability claim, the Board did not act in an arbitrary and capricious manner in denying benefits.

**C.    Sufficiency of Notice of Denial of Benefits**

Finally, Plaintiff argues that the Board's decision lacks rationale, and asks that the decision be reversed so that the Board can make specific findings of fact supporting its decision. The ERISA claims procedure provision requires that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

Plaintiff claims that the denial of benefits without adequate explanation is arbitrary and capricious, or at least insufficient for a court to conduct an appropriate review, relying on *VanderKlok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 616-17 (6th Cir. 1992). The court in *VanderKlok* found that a letter to a claimant which conveyed the denial of benefits was defective because it failed "to provide the specific reason or reasons for denial and the specific

---

[2] Dr. Klarman did not have a copy of Dr. Stehouwer's report when examining Plaintiff and drafting his own report. (A.R. at 177.)

reference to pertinent plan provisions on which the denial is based." *Id*. at 616. In addition, the letter did "not contain explicit information as to the steps to be taken if the employee wishes to submit his claim for review." *Id*.

However, not every procedural defect requires a substantive remedy, and the Sixth Circuit has adopted a "substantial compliance" test in determining whether denial notices meet the requirements of § 1133. *See Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996) ("Generally, the courts have recognized in E.R.I.S.A. cases that procedural violations entail substantive remedies only when some useful purpose would be served."); *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). To determine whether there was substantial compliance, "the court must consider all the communications between the administrator and plan participant." *McCartha*, 419 F.3d at 444. Remand is not warranted where it "would represent a useless formality." *Kent*, 96 F.3d at 807. In *Kent*, the court found that review of "additional evidence is only pertinent to the extent that it shows that the fiduciary's decision was an abuse of discretion" and was not appropriate where "much, if not all, the objective medical evidence supports the conclusion that plaintiff was not disabled." *Id*. The court also noted that even though the procedures in *Kent* were "technically deficient," the procedures "when viewed in the light of the myriad of communications between claimant, her counsel and the insurer, were sufficient" under § 1133. *Id*.

The notices provided to Plaintiff following the first review of her claim and her appeal were substantially the same, stating:

> Your request for a Total and Permanent Disability Retirement has been evaluated by the Committee and it has been denied effective September 14, 2005.
>
> The Committee has denied your application based on the report from the Independent Medical Exams you went to on October 28, 2003, January 13, 2005, and February 15, 2005. Enclosed is a copy of the IME's for your review.

(A.R. at 102).³ Procedurally, the notices fail to refer to the specific part of the Plan on which the denial was based and fail to provide information on how to file an appeal. The notices also failed to include specific findings of fact, although they stated that the decisions were based on the cited IMEs, copies of which were provided for Plaintiff's review.

Despite the procedural defects, based on the totality of the communications between Plaintiff, her counsel, and Electrolux, the notices given by the Board were sufficient. On September 2, 2005, prior to receiving notice of the Board's first decision, Plaintiff's counsel requested that any decision be communicated in writing to Plaintiff, along with the rationale for any denial of benefits and a copy of "all of the records utilized" in making the decision. (A.R. at 98.) The Board sent notice and, although the notice did not specifically address the Board's reasoning or cite to the relevant Plan sections, it did state that the decision was based on the IMEs and provided those records to Plaintiff. Following receipt of the notice denying Plaintiff's application, Plaintiff's counsel requested an appeal and forwarded copies of additional medical records and a deposition of Dr. Hyatt to the Board. (A.R. at 208.) Plaintiff's counsel also communicated his intention to file an action in this Court should no appeals procedure exist. (A.R. at 209.) After reviewing the appeal, the Board again sent notice to Plaintiff stating that the decision was based on the IMEs and provided copies of those IMEs. The "myriad of communications" indicates that the notices were sufficient under § 1133. *See Kent*, 96 F.3d at 805 (finding sufficient notice where the notice sent to claimant did not specify reasons for denial or cite pertinent plan sections, but employer's agent later "explained the company's position" by telephone, provided plan records and documents to claimant's subsequently-

---

³The notices refer to the Board as the "Committee." The notice regarding Plaintiff's appeal was nearly identical, referring to her "appeal" and basing the denial of her appeal on the IMEs Plaintiff attended on November 2, 2005, and November 7, 2005, while omitting any reference to the IMEs of October 23, 2003, January 13, 2005, and February 15, 2005. (A.R. at 153.)

obtained counsel, and later issued a second denial citing the relevant plan sections and informing the claimant of the appeals process).

Furthermore, remand would constitute a "useless formality" because, for the reasons previously discussed, the Board's decision was not arbitrary and capricious given the broad discretion granted by the Plan and the lack of evidence showing an abuse of that discretion.

### III. Conclusion

For the foregoing reasons, the Court will grant Electrolux's motion and will enter judgment in favor of Electrolux.

An Order consistent with this Opinion will be entered.


Dated: April 5, 2007                              /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE